UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ORGANIZATION CONSUMERS
ASSOCIATION,

        Plaintiff,

v.

HAIN CELESTIAL GROUP, INC.,

        Defendant.

Case No. 1:16-cv-00925 (TNM)

## MEMORANDUM OPINION

The Organic Consumers Association ("Plaintiff") brings this action under the District of Columbia Consumer Protection Procedures Act ("CPPA"), seeking to prevent Defendant Hain Celestial Group, Inc. ("Hain Celestial") from labeling its "Earth's Best" infant and toddler formula products as "organic," at least when those products are in the District of Columbia. The complaint's only count alleges that the products contain synthetic ingredients that are not permitted under the federal Organic Food Production Act of 1990 ("OFPA"), and thus the "organic" label is a misrepresentation that violates the CPPA. Hain Celestial moves to dismiss, contending, *inter alia*, that private enforcement of organic labeling via state law is preempted by the OFPA. For the reasons that follow, I conclude that Plaintiff's claim is federally preempted, and grant the motion to dismiss.

## I.     BACKGROUND

Plaintiff filed a single-count complaint in D.C. Superior Court, alleging that Hain Celestial's infant and toddler formulas under the "Earth's Best" brand (the "Challenged

1

Products") contain "[a]t least 29 ingredients" (the "Challenged Ingredients") not permitted under the OFPA. Compl. 4. According to Plaintiff, these ingredients are "nonagricultural substances," some of which pose health risks to the public, and all of which are illegal in "organic" infant formula because they are not permitted under the OFPA and its regulations. Compl. 4, 12-23. Plaintiff seeks a declaration that Defendant's conduct in marketing the Challenged Products violates the CPPA, an order enjoining the conduct and requiring "corrective advertising and revised labeling," costs and disbursements (including attorneys' fees), and punitive damages. Compl. 27-28.

Hain Celestial removed to federal court on the basis of diversity and federal question jurisdiction, and Plaintiff did not contest the removal. Hain Celestial moves to dismiss the complaint in its entirety.[1]

## I. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (alteration omitted) (quoting *Iqbal*, 556 U.S. at 678). In undertaking this inquiry, the court will "accept all the well-pleaded factual

---

[1] In the alternative, Defendant seeks summary judgment, or a stay of this action pending rulemaking under the primary jurisdiction of the USDA.

allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Id.* However, we do not assume the truth of legal conclusions. *Id.*

## II. ANALYSIS

### A. Standing

Because jurisdiction is a threshold question, I begin by considering whether Plaintiff has standing.[2] Defendant contends that Plaintiff has failed to adequately plead a concrete "injury-in-fact," part of the "'irreducible constitutional minimum' of Article III standing. *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); Def.'s Mot. Dismiss 10-15. But the complaint alleges, *inter alia*, that because it exists to promote the interests of organic consumers, Plaintiff funds programs aimed at informing organic consumers about the dangers of synthetic and genetically-modified ingredients, appealing directly to manufacturers like Hain Celestial, and advocating for stricter organic standards with government actors. Compl. 8, ¶¶ 30-31 (citing Compl. Ex. 12). The Challenged Products embody what Plaintiff opposes, creating a "need to 'counteract' the [Defendant's] assertedly illegal practices," *Fair Employment Council of Greater*

---

[2] The requirements for both diversity and federal question jurisdiction are satisfied. As for diversity jurisdiction under 28 U.S.C. § 1332, Plaintiff is a Minnesota corporation, while Defendant a Delaware corporation with its principal place of business in the state of New York, and the amount in controversy exceeds $75,000. *See* Notice of Removal 3-4; 28 U.S.C. § 1446(c)(2)(B). The Court also has federal question jurisdiction under 28 U.S.C. § 1331, because this is a "state-law claim [that] necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

3

*Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)), and requiring still more programmatic efforts. Compl. Ex. 12 (educational and political efforts, naming Earth's Best infant formula a "worst offender"); Compl. 8 ("efforts to persuade . . . Earth's Best").

Based on these well-pleaded facts, I conclude that Plaintiff has sufficiently alleged injury-in-fact. When the defendant's alleged violation has "perceptibly impaired" the plaintiff's programs, "there can be no question that the organization has suffered injury in fact." *Fair Employment Council*, 28 F.3d at 1276 (D.C. Cir. 1994) (quoting *Havens*, 455 U.S. at 379) (The defendant's "discriminatory actions have interfered with [] efforts and programs and have also required [plaintiff] to expend resources to counteract [the] alleged discrimination")); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27-29 (D.C. Cir. 1990) ("[A]n organization establishes Article III injury if it alleges that purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action"). And since Plaintiff satisfies Article III's "irreducible minimum," *Lujan*, 504 U.S. at 560, it has little trouble demonstrating standing under the CPPA, which broadly confers standing on "a consumer," "a nonprofit organization . . . on behalf of itself or any of its members," and even "a public interest organization . . . on behalf of . . . a consumer or a class of consumers," if the organization has a "sufficient nexus to the interests involved." D.C. Code §§ 28-3905(k)(1)(A), (C), (D); *id.* § 28-3901(a) (defining "consumer" in the noun form to include a nonprofit organization or public interest organization that "does or would purchase . . . goods or services" "in order

to test or evaluate qualities pertaining to use for personal, household, or family purposes"); Compl. 7-9, ¶ 33.

Satisfied with jurisdiction, I proceed to consider Defendant's federal preemption claim.

### B. Federal Preemption

The Supremacy Clause of the U.S. Constitution provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "In applying this Clause, courts have identified three ways in which a federal statute or regulation can pre-empt state law: by express pre-emption, by 'field' pre-emption . . . and by implied or conflict pre-emption, which applies when a state law conflicts with a federal statute or regulation." *Geier v. Am. Honda Motor Co.*, 166 F.3d 1236, 1237 (D.C. Cir. 1999) (citations omitted).[3] "[I]mplied conflict pre-emption [exists] where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, (1995) (quoted in *Geier*, 166 F.3d at 1242). Defendant's preemption arguments largely fall into the obstacle preemption category.

---

[3] Even though the District is not a state, "[t]raditional preemption principles apply to District of Columbia laws." *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 326 (D.C. Cir. 2014); *see also United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131, 154 n.99 (D.D.C. 1982) (explaining that "preemption doctrine [is] an appropriate gauge of Congress' intent concerning the relationship between the D.C. statutes and the [federal] antitrust laws.").

5

In undertaking a traditional preemption analysis, courts apply two presumptions. "First, because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). This is so "particularly [when] Congress has legislated . . . in a field which the States have traditionally occupied," where "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quotation marks and citations omitted). Second, "the purpose of Congress is the ultimate touchstone." *Id.* (alteration and citations omitted). Intent can "primarily" be discerned through the statute's language, but "the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law" is also relevant. *Id.* at 486; *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) ("Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."). "State law is not preempted . . . unless that was the clear and manifest purpose of Congress." *Washington Serv. Contractors Coal. v. D.C.*, 54 F.3d 811, 815 (D.C. Cir. 1995) (citations and quotation marks omitted).

Defendant argues that permitting suits under state law for violations of the OFPA would conflict with the statute's purpose by creating a patchwork of conflicting rulings about the permissible use of the term "organic," and undermining the certifying agent, who is tasked by statute with certifying organic production operations only if they are fully compliant with the law. Def.'s Mot. Dismiss 15-20; 7 U.S.C. § 6503(d). Defendant also contends that the OFPA does not provide for private enforcement, but instead

6

empowers the USDA to lead enforcement efforts. *Id.* at 20-21. In response, Plaintiff argues that its suit will *uphold* the national OFPA standard for "organic" labeling, that the OFPA permits states to employ their own enforcement mechanisms, and that establishing a CPPA violation in this case would not directly challenge the certification decision itself, since the certifying agent reviews only part of the overall operation for compliance with an approved organic plan, and certification is not synonymous with OFPA compliance. Opp. 26-31.

In enacting the OFPA, Congress could not have been clearer about its purposes: "(1) to establish national standards governing the marketing of certain agricultural products as organically produced products; (2) to assure consumers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501. To accomplish these objectives, the OFPA directs the USDA to "establish an organic certification program" for organic products, incorporating USDA-approved "State organic certification programs," and "implement[ing] the program . . . through certifying agents," who are to ensure compliance with the OFPA and approved state organic plans. 7 U.S.C. § 6503.[4] This design was implemented by the USDA's final rule creating the National Organic Program ("NOP"). *See National Organic Program*, 65 Fed.Reg. 80,548 (Dec. 21, 2000) (codified at 7 C.F.R. pt. 205). Under NOP regulations, a product may only be sold as "organic" if it contains "not less than 95 percent organically produced raw or processed agricultural products," and the remaining five percent may consist of synthetic

---

[4] Certain products that have been approved by a certifying agent may be labelled with a distinct "USDA Organic" seal. *See* 7 C.F.R. § 205.311. This seal is displayed on each of the Challenged Products. Compl. Ex. 1.

ingredients only if those ingredients are on the "National List." 7 C.F.R. § 205.301(b). As contemplated by the OFPA, the National List contains a comprehensive "itemization, by specific use or application" of permitted synthetic ingredients. 7 U.S.C. § 6517; 7 C.F.R. § 205.600-607 (the National List).

Although many courts have considered the preemptive effect of the OFPA on state law enforcement suits, I see the only federal circuit-level decision as the leading case: *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781 (8th Cir. 2010).

In *Aurora*, the Eighth Circuit considered a consolidated multi-district action in which the plaintiffs alleged that milk being sold and marketed as "organic" was being produced in a manner inconsistent with organic production and labeling under the OFPA, with accompanying misrepresentations about the actual care of the cows in question, in violation of various state statutes. The plaintiffs had sued the Aurora Dairy itself, its certifying agent, and the retailers that packaged and sold the milk. After rejecting the plaintiffs' express and field preemption arguments, *Aurora*, 621 F. 3d at 792-94, and noting that "[c]onsumer protection is quintessentially a field which the States have traditionally occupied," *id.* at 794, the court addressed the conflict preemption arguments in three categories. First, the court held that all claims against the certifying agent were federally preempted, reasoning that direct challenges to the certification decision would present an obstacle to the federal certification scheme itself, and it would be impossible for certifying agents to comply with the detailed federal scheme for revoking a certification as well as state statutory duties. *Id.* at 795.

8

Second, the Eighth Circuit held that "claims that Aurora and the retailers sold milk as organic when in fact it was not organic are preempted because they conflict with the OFPA." *Id.* at 796. The court reasoned that while such suits might enhance consumer confidence "that organically produced goods meet a consistent standard, any added assurance comes at the cost of the diminution of consistent standards," given the likelihood of different legal interpretations, and varying "enforcement strategies and priorities." *Id.* at 796-97 (quoting 7 U.S.C. § 6501(2)). The court also found that "any attempt to hold Aurora or the retailers liable under state law based upon its products supposedly not being organic directly conflicts with the role of the certifying agent," because it is the role of those agents to ensure OFPA compliance. *Id.* at 797.

However, the Eighth Circuit also held that a third category of claims were *not* preempted: "state law challenges to the facts underlying certification." *Id.* Noting that the OFPA is singularly focused on creating and enforcing a consistent national standard for "organic" production, the court reasoned that suits alleging animal cruelty, for example, would not be preempted even though a certification of OFPA compliance would have been denied if the same facts were presented to the certifying agent. *Aurora*, 621 F.3d at 797-98. The Eighth Circuit emphasized that Congress could not have intended to preclude suits based on the facts underlying certification, because "the evidence which supported certification could, and very likely would, be different from the evidence which supports a state cause of action." *Id.* at 798.

After *Aurora* was decided, most other courts have followed its reasoning. In fact, two federal district courts have applied *Aurora*'s logic to claims essentially identical to Plaintiff's. *See Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374, 375-77, 381

(E.D.N.Y. 2016) (infant formula allegedly mislabeled "organic"); *Birdsong v. Nurture, Inc.*, 2017 WL 4480152, at *1 (E.D.N.Y. Sept. 28, 2017) (same challenge, this time with infant and baby food products). In *Marentette*, the district court reasoned that "[o]nce the federal government, through a USDA-accredited certifying agent, permits a manufacturer to label a product as "Organic" because it has met that standard, any allegation that the product is not truthfully labeled as such is a challenge to the certifying agent's decision, not the manufacturer's representation." 201 F. Supp. 3d at 385. *Birdsong* adopted the same logic, pointing out that permitting these state law claims would "creat[e] state-by-state determinations of what constitutes a proper "Organic" certification—the very "patchwork" of standards that the OFPA sought to eliminate." 2017 WL 4480152 at *7. Accordingly, both *Marentette* and *Birdsong* dismissed the "organic" claims on federal preemption grounds.

One case has explicitly rejected *Aurora*'s logic: *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *5 (S.D.N.Y. May 7, 2015).[5] In *Segedie*, faced with similar state claims that the Hain Celestial Group had falsely presented its food and body care products as "organic" when ingredients therein were not permitted under the OFPA, the Southern District of New York found that the OFPA had no preemptive effect.[6] *Segedie*

---

[5] One state supreme court has also assessed *Aurora*'s import: *Quesada v. Herb Thyme Farms, Inc.*, 361 P.3d 868 (2015). There is some tension between the holdings in *Quesada* and *Aurora*, since *Quesada* held that fraudulent mislabeling claims were not preempted, while *Aurora* emphasized that the OFPA preempted any allegation that products labeled "organic" are in fact not organic. While *Quesada*'s result arguably fits into the *Aurora*'s third category—"state law challenges to the facts underlying certification," *Aurora*, 621 F. 3d at 797—the holding in *Quesada* is ultimately inapplicable here, since the complaint does not allege any irregularities in the packing or labeling processes, but directly challenges listed ingredients.

[6] On this basis, Plaintiff initially asserted that Defendant's preemption arguments are subject to issue preclusion, because Hain Celestial has already made them in *Segedie*,

10

specifically rejected *Aurora*'s assessment of the preemption issue, finding, *inter alia*, that state-level enforcement would enhance rather than obstruct the OFPA's creation and enforcement of a national standard, and complement the role of certifying agents by providing a damages remedy for violations of the OFPA. Where *Aurora* predicted that the "natural result of . . . differences in interpretation and enforcement would be an increase in . . . consumer confusion and troubled interstate commerce," *Aurora*, 621 F.3d at 797 (internal quotation marks and citation omitted), *Segedie* offered several reasons in rebuttal: that state law enforcement would boost consumer confidence that the national organic standards were actually being followed, that the risk of divergent interpretations did not present a "sharp" obstacle to uniformity, and the lack of a federal remedy, as in *Wyeth v. Levine*, 555 U.S. 555 (2009), suggested that state remedies were not preempted. *Segedie*, 2015 WL 2168374 at *6-7.[7]

---

where they were rejected. But at oral argument, Plaintiff conceded that the doctrine did not really apply. Tr. of Proceedings at 5. Issue preclusion—or collateral estoppel—only applies to "a valid and final judgment." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015). The *Segedie* decision is not a "final judgment," but an interlocutory order, as the district court's subsequent order denying a certificate of appealability demonstrates. *Segedie v. The Hain Celestial Grp., Inc.*, 2015 WL 5916002 at *7 (S.D.N.Y. Oct. 7, 2015). An interlocutory order is by definition not a final judgment, since it "may be revised at any time" before the entry of a "judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Furthermore, applying issue preclusion would "freeze the development of the law in an area of substantial public interest," *Pharm. Care Mgmt. Ass'n v. D.C.*, 522 F.3d 443, 447 (D.C. Cir. 2008), despite the fact that *Segedie* conflicts with the weight of existing precedent, and this circuit has yet to rule on the question. *See* Reply 3. For all of these reasons, issue preclusion does not apply to Defendant's preemption argument.

[7] Although Plaintiff also attempts to rely on *Wyeth*, I find the decision largely inapplicable here. *Wyeth* held that Congress intended drug labeling requirements under the Federal Food, Drug, and Cosmetic Act ("FDCA") to set a floor for drug regulation, not a ceiling that precluded state rights of action. *Wyeth*, 555 U.S. at 573-74. "By contrast, the OFPA defines the precise term "Organic" and does not simply set minimum standards for that label." *Marentette*, 201 F. Supp. 3d at 384. With robust requirements

11

I find *Aurora* both persuasive and dispositive, and decline to adopt the reasoning of *Segedie*. Plaintiff's alleged violation of the CPPA is squarely premised on the allegation that Hain Celestial is selling infant formula "as organic when in fact it was not organic," but such a claim stands as an obstacle to each of the three stated purposes of the OFPA. *Aurora*, 631 F.3d at 796.

First, the OFPA was adopted "to establish national standards governing the marketing of . . . organically produced products." 7 U.S.C. § 6501(1). Although Plaintiff seeks to enforce those national standards, it misunderstands the explicit method that Congress adopted for unfolding and enforcing them: certifying agents managed by the USDA. Through a national system of approved certifying agents, the USDA ensures that products marked "organic" have been produced according to an approved organic plan. Non-compliance with the OFPA and its implementing regulations can result in revocation of a certification, and civil penalties. 7 C.F.R. § 205.66. By regulating "organic" products through a national certification process, rather than state-by-state lawsuits, the OFPA ensures that a truly national standard exists. If Plaintiff were allowed to proceed and prevail in this action, the immediate result would be that Hain Celestial would not be able to market the Challenged Products in the District of Columbia, while the status quo would remain unchanged in the rest of the nation. What was once a truly national standard would no longer be uniform. Even after a sustained process of state-by-state

---

for organic products that incorporate approved state organic certification programs, the OFPA envisions a specific and limited role for additional state requirements. *See, e.g.*, 7 U.S.C. § 6503 ("[T]he Secretary shall permit each State to implement a State organic certification program for . . . agricultural products that have been produced using organic methods as provided for in this chapter."). In other words, the OFPA is very different from the FDCA.

12

litigation, unanimity would be unlikely to result, since the relevant state statutes will vary, and the underlying merits of the federal question—actual compliance with the OFPA—is not an easy victory for either side.[8]

Second, the OFPA was enacted "to assure consumers that organically produced products meet a consistent standard." 7 U.S.C. § 6501(2). Plaintiff's suit could certainly help to assure consumers that OFPA standards were rigorously enforced. However, the suit could also confuse a well-informed consumer about the standard itself. If Plaintiff prevailed here, a savvy consumer would know that the Challenged Products are not considered "organic" in Washington D.C., but would wonder why they were labeled as "organic" elsewhere. In other words, the suit would not help "assure consumers that . . . products meet a *consistent* standard." *Id.* (emphasis added).

Third and finally, the OFPA was intended "to facilitate interstate commerce in . . . food that is organically produced." 7 U.S.C. § 6501(3). A verdict for the Plaintiff would mean that Defendant could not distribute its Challenged Products as currently labeled in the District. This type of obstacle to interstate commerce, inevitably multiplied in varying suits across the country, would squarely obstruct the original Congressional vision of freely flowing interstate commerce enabled by a unified national standard. As the Eighth Circuit reasoned, "[t]he natural result" of allowing these suits "would be an increase in the consumer confusion and troubled interstate commerce that characterized

---

[8] Defendant contends that the 29 Challenged Ingredients constitute "[n]utrient vitamins and minerals[]" in accordance with 21 CFR 104.20," 7 C.F.R. § 205.605(a), as "nutrient(s) [that] may appropriately be added to a food that replaces traditional food in the diet to avoid nutritional inferiority," 21 C.F.R. 104.20(e): an argument that may prevail in some courts, but not in others.

the period before the OFPA, which stands in direct conflict to the OFPA's third purpose." *Aurora*, 621 F.3d at 797 (citation and quotation marks omitted).

None of Plaintiff's counter-arguments are persuasive.

Plaintiff contends that the OFPA enforcement structure is capacious enough to allow for private rights of action via state law, since approved state programs may "contain more restrictive requirements" than the OFPA, 7 U.S.C. § 6507(b)(1), and state enforcement programs might be able to issue stop sale orders, which the National Organic Program is powerless to do. Opp. 28-29 (citing 65 FR 80548, 80626). But Plaintiff ignores the methods and logic of the NOP's enforcement structure, which never mentions private enforcement via state law. Under 7 C.F.R. § 205.661 ("Investigation of certified operations"), certifying agents and the "governing State official" of state organic programs have the authority to investigate "complaints of noncompliance with the [OFPA] or [its] regulations." Noncompliance, whether discovered via "inspection, review, or investigation of a certified operation," triggers an escalating enforcement procedure led by either the certifying agent or state officials. 7 C.F.R. § 205.662 ("Noncompliance procedure for certified operations"). The regulation contemplates a process that may include notification (to allow the certified program to resolve the noncompliance), suspension or revocation of organic certification, civil penalties for violations committed "knowingly," and even criminal liability for false statements under 18 U.S.C. § 1001. *Id.* Private enforcement via state law is inconsistent with this scheme.

Accordingly, Plaintiff's claims are federally preempted. To allow private suit under the CPPA for violations of the OFPA presents "an obstacle to the accomplishment

and execution of the full purposes and objectives of Congress." *Freightliner Corp*, 514 U.S. at 287.

### III. Conclusion

For the aforementioned reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss is GRANTED, and the entire case is dismissed with prejudice.[9] A separate order will issue.

**SO ORDERED.**

Dated: January 3, 2018

TREVOR N. MCFADDEN
United States District Judge

---

[9] Defendant's request for the Court to strike Plaintiff's jury demand and request for punitive damages is DENIED as moot.